IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

Lantha Owens,                          )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )          4:16-cv-1865-LSC
                                       )
NANCY BERRYHILL,                       )
Commissioner of                        )
Social Security,                       )
                                       )
          Defendant.                   )

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Lantha Owens, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Ms. Owens timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Owens was 45 years old on her July 3, 2014, alleged onset date, and she has a high school education. (Tr. at 53, 194, 201.) Her past work experiences include employment as a cool spoil winder. (Tr. at 53, 242, 246.) Ms. Owens

1

alleges that she suffers from "bipolar 1 disorder, recurrent with multiple psychiatric admissions due to psychosis, suicidal and homicidal ideation, severe depression, severe neck pain s/p anterior fusion at C6-7 with radiculopathy following surgery on 1/21/10, right carpal tunnel syndrome, and severe low back pain with bilateral sciatica." (Doc. 12 at 3.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first found that Ms. Owens was insured through the date of his decision. (Tr. at 45.) He further determined that Ms. Owens has not engaged in SGA since July 3, 2014, the alleged disability onset date. (*Id.*) According to the ALJ, Plaintiff's mood disorder, hypertension, and disorders of the back with a history of an anterior cervical discectomy and fusion ("ACDF") at C6-C7 are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 48.) The ALJ did not find Ms. Owens's allegations to be totally credible, and he determined that she has the

following RFC: light, unskilled work but she: (1) could not climb ropes, ladders or scaffolds or work at unprotected heights or with hazardous machinery; (2) could only occasionally stoop, crouch, or crawl; (3) could no more than frequently reach overhead bilaterally; and (4) could only occasionally interact with the general public and no more than frequently interact with co-workers and supervisors. (Tr. at 49-50).

According to the ALJ, Ms. Owens is unable to perform any of her past relevant work, she is "a younger individual age 18-49," has a "high school education," and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 53.) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") to aid in his ultimate determination that there is a significant number of jobs in the national economy that she is capable of performing, including garment sorter, shipping/receiving weigher, and laundry sorter. (Tr. at 54.) The ALJ concluded his findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of his decision. (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Owens alleges that the ALJ's decision should be reversed and remanded for several reasons: (1) the ALJ failed to consider all of her severe impairments at step two; (2) the ALJ should have determined at step three that Plaintiff met or equaled either Listing 12.04 and/or Listing 12.06C; (3) the ALJ failed to state adequate reasons for finding Plaintiff not credible; (4) the ALJ's RFC finding was conclusory and violated Social Security Ruling ("SSR") 96-8a; and (5) the Appeals Council erred in refusing to review Plaintiff's case.

### A. Severe Impairments

Plaintiff claims that the ALJ failed to consider her bipolar disorder a severe impairment at step two, noting that she has been diagnosed with that condition. However, Plaintiff's first argument does not warrant reversal of this case. As an initial matter, a mere diagnosis does not establish that a particular condition is

disabling. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Importantly, Plaintiff bears the burden of proving that an impairment is severe. *See Doughty*, 245 F.3d at 1278. A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921.

At step two, the ALJ found in Plaintiff's favor by finding that she had several severe impairments, including a mood disorder, hypertension, and disorders of the back with a history of an ACDF at C6-C7. (Tr. at 45). In making this finding, the ALJ expressly acknowledged that Plaintiff had received diagnoses of both bipolar disorder and a mood disorder in 2014 and thoroughly discussed the evidence relating to Plaintiff's mental conditions. (Tr. at 46-47). The ALJ's finding that Plaintiff's severe impairments included a mood disorder thus encompassed Plaintiff's bipolar disorder diagnosis. Indeed, the National Institutes of Health ("NIH") recognizes that the term "mood disorder" encompasses bipolar disorder.

In proceeding with the sequential evaluation process, the ALJ then went on to consider all of Plaintiff's conditions and complaints, not just her mood disorder, hypertension, and back disorder. (Tr. at 45-54). The ALJ expressly discussed Plaintiff's complaints of various mental symptoms, including her allegations of limitations due to bipolar disorder, as well as her medical records concerning the

treatment she received for her mental health complaints and conditions. (Tr. at 48-53). However, as further discussed below, the ALJ determined that the record evidence did not fully support Plaintiff's subjective complaints. As also further discussed below, substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints and finding that she retained an RFC to perform light work with additional reaching, postural, and environmental limitations, as well as mental restrictions to unskilled work, only occasional contact with the general public, and no more than frequent interaction with co-workers and supervisors. (Tr. at 49-50.)

Thus, not only did the ALJ's finding that Plaintiff had a severe impairment of a mood disorder encompass Plaintiff's bipolar disorder diagnosis, but the ALJ's consideration of Plaintiff's mental condition after proceeding past step two rendered harmless any alleged error in not separately identifying bipolar disorder as one of Plaintiff's severe impairments in his step two finding. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (noting that step two is "a filter" in concluding that the finding of *any* severe impairment is sufficient to satisfy step two requirements); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902-03 (11th Cir. 2011) (any "severe" impairment satisfies step two because the ALJ is required to consider impairments that are not "severe" when proceeding beyond step two;

even if ALJ erred in finding some impairments not "severe," the error is harmless).

**B.    Meeting a Listing**

Plaintiff next contends that the ALJ should have found that her mental impairments met Listing 12.04 (affective disorders) and/or Listing 12.06C (anxiety disorders) because she was hospitalized for mental conditions three times: in April 2011, December 2012, and July 2014. Plaintiff's second argument fails because, although she block quotes a number of her treatment notes and a portion of her own hearing testimony in her briefs, she fails to explain how any of these records show that she actually met all the criteria of these listings.

To establish a presumption of disability based upon a listing at step three, a claimant must show "a diagnosis included in the Listings and must provide medical reports documenting that the conditions met the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926. Additionally, a claimant's impairments must meet or equal *all* of the specified medical criteria in a particular listing for the claimant to be disabled at step three. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall

functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531.

### 1. Listing 12.04

Listing 12.04 addresses affective disorders, as follows:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following: a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration; OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The term "marked" means more than moderate but less than extreme. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C. Episodes of decompensation are exacerbations or temporary increases in symptoms accompanied by a loss in adaptive functioning, as manifested by difficulties in daily

activities, social functioning, or concentration, persistence or pace. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(4). "[R]epeated" episodes of "extended duration" means three episodes within one year or an average every four months, each lasting for two weeks. *Id.*

Substantial evidence supports the ALJ's finding that Plaintiff did not meet this listing because she had no more than moderate restriction in activities of daily living, social functioning, or maintaining concentration, persistence, or pace, and no repeated episodes of decompensation each of extended duration. As the ALJ discussed, Plaintiff indicated in function reports that she had no problems with personal care and that she was able to prepare her own meals, cleaned, did laundry, washed dishes, did light yard work, went shopping, and could drive. (Tr. at 48, 252-54, 264-65). Plaintiff also indicated that she did not have any problems getting along with family, friends, or neighbors, got along well with authority figures, and never lost a job because of problems with getting along with others. (Tr. at 48-49, 256-57, 267-68). Plaintiff also indicated to the one-time examining consultative psychologist in this case, Mary Arnold, Psy. D., that she was independent in her activities of daily living, went out with her boyfriend, attended art festivals, and watched football with friends. (Tr. at 48, 530). Although Plaintiff indicated in her function reports that she had problems with memory and concentration, Dr.

Arnold found Plaintiff had good cognition testing, including good calculation, serial

7s, recall, and forward and backward counting results. (Tr. at 49, 267, 528).

As the ALJ also noted, the non-examining state agency psychological

consultant, Larry Dennis, Ph. D., also reviewed the evidence and determined in

December 2014 that Plaintiff had only mild restriction in activities of daily living

and moderate restriction in social functioning and concentration, persistence, or

pace. (Tr. at 48-49, 117-18). Dr. Dennis additionally indicated that Plaintiff did not

have repeated episodes of decompensation, each of extended duration. (Tr. at 118).

While he acknowledged Plaintiff had experienced some episodes of

decompensation, as Plaintiff's medical records between February 2005 and

October 2014 showed some hospitalizations for mental symptoms (tr. at 118-19), he

properly found that these treatment records did not constitute "repeated"

episodes of "extended duration" as contemplated by the Listings. *See* 20 C.F.R. pt.

404, subpt. P, app. 1, § 12.00C(4). Dr. Dennis based his assessment on a review of

Plaintiff's function reports and a review of Plaintiff's mental health records,

including Dr. Arnold's consultative psychological examination. (Tr. at 118-19).

Although the ALJ ultimately assessed greater restrictions in Plaintiff's activities of

daily living, Dr. Dennis's assessment provides additional support for the ALJ's

determination that Plaintiff did not meet the relevant criteria of Paragraphs B and C of Listing 12.04.

### 2. Listing 12.06

Listing 12.06 addresses anxiety-related disorders, as follows:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration. OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

Since Plaintiff relies specifically upon 12.06C, she must have proven that she was completely unable to function independently outside of her home due to her anxiety issues. *See id.* As noted above, by Plaintiff's own statements in her function reports and to Dr. Arnold, Plaintiff was able to go shopping in stores, went out with her boyfriend, attended art festivals, and watched football with friends. (Tr. at 48, 51, 254, 265, 530). As the ALJ noted, Plaintiff also testified that a typical day for her may involve visiting people, going walking, or going to the grocery store. (Tr. at 50, 69). In addition, at her consultative examination with Dr. Arnold in October 2014, Plaintiff had normal behavior and appearance and did not appear to require assistance from anyone to attend the examination. (Tr. at 528).

Plaintiff's treatment records since her alleged onset date also fail to show findings indicative of a complete inability to function independently outside the area of her home. As the ALJ discussed, although Plaintiff was hospitalized for mental symptoms in July 2014, Plaintiff indicated at the time of admission that she had not been compliant with her medication and had been self-medicating with marijuana and alcohol. (Tr. at 51, 455). Plaintiff "improved dramatically" once placed on medication and was discharged after eight days. (Tr. at 51, 476). Upon discharge, Plaintiff was awake, alert, and fully oriented, had normal speech, full range of mood and affect, linear thought processes, unremarkable thought content, and improving insight and judgment. (Tr. at 477). Subsequent therapy records from July 2014 through February 2015 showed normal appearance, mood, affect, orientation, and behavior, and a Global Assessment of Functioning ("GAF") score of 51, indicating no more than moderate symptoms. (Tr. at 51, 494-95, 498, 638). *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000, Text Rev.) ("DSM-IV-TR"). In addition, Plaintiff's other treatment notes from 2014 and 2015 showed complaints for physical conditions, with no reports of psychological symptoms. (Tr. at 51, 537, 539, 542-43).

In sum, Plaintiff failed to show her impairments met Listings 12.04 or 12.06C, and substantial evidence supports the ALJ's conclusion that they did not.

## C.    Credibility Determination

Plaintiff contends generally that the ALJ did not state adequate reasons for finding her not credible. When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 96-7p;[1] *Wilson*, 284 F.3d at 1225–26. If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.*

---

[1]    Effective March 28, 2016, the Commissioner replaced SSR 96-7p with SSR 16-3p. The Commissioner explained that the new ruling "eliminat[ed] the use of the term 'credibility' from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p at *1-2. Neither party has asserted that SSR 16-3p applies retroactively to Plaintiff's claim in this case, which was decided before March 28, 2016.

The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore*, 405 F.3d at 1212 n.4. When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In making the credibility evaluation, the Commissioner considers objective medical evidence and information from the Plaintiff and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating or aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529, 416.929. A credibility determination is a question of fact: like all factual findings by the Commissioner, it is subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).

In this case, the ALJ properly followed the two-step process in assessing Plaintiff's alleged symptoms and ultimately found that her complaints of disabling pain were not entirely credible. (Tr. at 50.) The ALJ acknowledged that Plaintiff

alleged that she could not work because of pain, that she took medication that made her drowsy and lightheaded, and that she was nervous and anxious and had problems sleeping. (Tr. at 50-51, 67, 70-72). However, the ALJ determined that the record did not fully support Plaintiff's allegations. (Tr. at 51). As reflected in the ALJ's decision, the ALJ determined Plaintiff's complaints were inconsistent with the objective medical evidence of record, the effectiveness of the medication she received, the lack of any mention of medication side effects in Plaintiff's medical records, and Plaintiff's reported activities of daily living. (Tr. at 51-52).

Substantial evidence supports the ALJ's consideration of all this evidence in evaluating the credibility of Plaintiff's subjective complaints. As reflected above and in the ALJ's decision, with respect to the objective medical evidence, although Plaintiff was hospitalized for eight days after a period of noncompliance with her psychiatric medication in July 2014, her medical records showed improvement with medication and generally unremarkable mental status findings throughout the rest of 2014 and 2015. (Tr. at 51-52, 476-77, 494-95, 498, 528). Plaintiff's medical records throughout 2014 and 2015 also consistently showed unremarkable physical exam findings, including normal strength, range of motion, and other musculoskeletal and neurological findings. (Tr. at 52, 449-50, 456, 461, 485, 491,

528, 538-40, 544). Plaintiff's medical records also failed to show any significant complaint or concern about side effects from any of her medications.

The only specific argument Plaintiff makes with regard to the ALJ's credibility determination is that the ALJ should not have considered her self-reported daily activities. In support of this, Plaintiff cites *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), which states that participation in activities of short duration does not necessarily disqualify a claimant from disability. However, the regulations and case law also make clear that although not dispositive, a claimant's ability to perform various activities of daily living may show that the claimant's symptoms are not as limiting as alleged and may be considered by an ALJ for numerous purposes, such as in making a credibility determination. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Here, the ALJ did not rely solely on Plaintiff's daily activities in assessing her subjective complaints or concluding that she was not disabled, but as noted above, also expressly considered the other record evidence, including treatment notes and examination findings.

### D.    RFC Determination

Plaintiff argues, with no explanation why, that the RFC determination was conclusory and violates SSR 96-8p. This ruling states the Commissioner's policies

regarding the assessment of a claimant's RFC and calls for the ALJ to describe how the evidence supports his conclusion with "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 (July 12, 1996). Additionally, the ruling calls for the ALJ to describe how the evidence supports his conclusion and why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

However, as the ALJ discussed, the record evidence as a whole supported an RFC to perform a range of light work with additional reaching, postural, environmental, and mental limitations. (Tr. at 50-51). As previously discussed, the ALJ noted that the medical evidence showed that, although Plaintiff was hospitalized in July 2014 for mental symptoms, she reported upon admission that she had not been compliant with her medications and had been self-medicating with marijuana and alcohol. (Tr. at 51, 455). Plaintiff "improved dramatically" after receiving medication and was discharged after eight days, with generally unremarkable mental status findings and a GAF score of 51, indicating no more than moderate symptoms. (Tr. at 51, 476-77). *See* DSM-IV-TR at 34. Subsequent therapy records from July 2014 through February 2015 also showed normal

appearance, mood, affect, orientation, and behavior, and GAF scores indicating only moderate symptoms. (Tr. at 51, 494-95, 498). The record evidence failed to show Plaintiff required subsequent hospitalization for mental symptoms. (Tr. at 51). As the ALJ additionally noted, Plaintiff's consultative psychological evaluation with Dr. Arnold showed good cognitive testing results, including an ability to perform serial 7s, repeat sequences forward and backward, and recall objects. (Tr. at 51, 528). The ALJ further noted that Dr. Dennis had opined Plaintiff had no more than moderate mental restrictions, and the ALJ gave this opinion great weight. (Tr. at 53, 122-24). Additionally, Plaintiff's function reports and reports to Dr. Arnold indicated she was able to pay attention for thirty minutes to an hour, follow written and spoken instructions, read, use a computer, and watch television shows. (Tr. at 51, 256, 262, 266-67, 530). Plaintiff was also able to complete a number of household chores, including laundry and light yard work, as well as carry out her daily activities. (Tr. at 51, 251-54, 263-65, 530). With regard to social functioning, Plaintiff visited family, went out with her boyfriend, attended art festivals, and watched football with her friends. (Tr. at 51, 262, 530).

Regarding Plaintiff's physical functioning, the ALJ noted that Plaintiff's treatment notes from July 2014 through 2015 showed normal physical findings, including normal strength, range of motion, gait, and stance, and no findings of

back tenderness, joint stiffness, or mobility issues. (Tr. at 52, 449-50, 456, 461, 485, 491, 528, 538-40, 544). Plaintiff apparently was not taking medication for pain in July or August 2014 and appeared to be taking only aspirin as of October 2014 and ibuprofen as of January 2015. (Tr. at 468, 477, 529, 537, 540-41, 545). Regardless, none of Plaintiff's treatment notes throughout 2014 and 2015 shows complaints of side effects from any medication. Additionally, state agency reviewing physician Robert Heilpern, M.D., opined Plaintiff had an RFC to perform a range of light work with additional postural and environmental restrictions. (Tr. at 120-22). The ALJ determined this opinion was consistent with the objective medical evidence and Plaintiff's reported daily activities and gave it great weight. (Tr. at 53, 120-22).

In sum, Plaintiff fails to identify any evidence the ALJ should have considered but did not in assessing her RFC.

### E.     Appeals Council Review

Plaintiff contends that the Appeals Council did not properly consider a June 2016 psychological evaluation from David Wilson, Ph.D., and CED Mental Health records. (Tr. at 15-21, 34-36, 638-41).

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has

the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council must consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b). The new evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). It is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). When considering the Appeals Council's denial of review, a reviewing court considers such new evidence, along with all the other evidence in the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266.

Plaintiff submitted several items of new evidence to the Appeals Council after the ALJ's denial of her case. The Appeals Council's order denying her request for review expressly stated that it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council" but found it did "not provide a basis for changing the [ALJ's] decision." (Tr. at 2). The "Order of Appeals Council" that was referenced lists, among other evidence, medical records from

CED Mental Health Center dated from February 4, 2015 to May 27, 2015, which concern the time period considered by the ALJ. (Tr. at 5, 638-41). In a separate paragraph, the Appeals Council's order denying review also stated that it "looked at" medical records from CED Mental Health Center dated November 17, 2015 to May 11, 2016, and Dr. Wilson's June 2016 evaluation, but determined that this information was about a time later than the time period considered by the ALJ (on or before June 4, 2015). (Tr. at 2). Accordingly, the Appeals Council's order denying review makes clear that it reviewed *all* of the CED Mental Health Center records that Plaintiff submitted as well as the other medical evidence she submitted, including Dr. Wilson's evaluation, and made those CED Mental Health Center records that the Appeals Council determined were chronologically relevant a part of the record, but determined that the CED records and Dr. Wilson's evaluation dated after the ALJ's decision were not chronologically relevant.

Plaintiff appears to argue the Appeals Council had a duty to articulate how it considered the additional evidence, contending that the Appeals Council did not explain why the records were not chronologically relevant. However, the regulations do not impose an articulation duty on the Appeals Council when it denies a request for review. *See* 20 C.F.R. §§ 404.970, 416.1470; *see also Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784 (11th Cir. 2014) (holding Appeals Council

not required to provide a detailed discussion of a claimant's new evidence when denying a request for review, decided based on language in the Appeals Council's order similar to that used by the Appeals Council here).

Indeed, there was no error in the Appeals Council's refusal to consider the CED records and Dr. Wilson's evaluation dated after the ALJ's June 4, 2015 decision because they were not chronologically relevant. The CED records consisted of two treatment notes from November 2015 and May 2016 showing euthymic mood, insomnia, fair to poor insight and judgment, fair appetite and energy, appropriate behavior and adequate weight, with normal thought process and content in November and abnormal findings in May. (Tr. at 34, 36). Dr. Wilson's evaluation showed Plaintiff had irritable affect and some problems with sleep and appetite, but "medium" energy, and Dr. Wilson opined Plaintiff "would have difficulty maintaining any type of job." (Tr. at 18-19). Nothing in these records indicates that any of the findings in these evaluations related back to the relevant period on or before the ALJ's decision. Nothing in these records provide any detail about the nature and severity of Plaintiff's mental condition on or before the ALJ's decision. Indeed, nothing in Dr. Wilson's opinion indicated his opinion applied to the period on or before the ALJ's decision.

Plaintiff attempts to rely upon *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317 (11th Cir. 2015), where the Eleventh Circuit remanded a case to the Commissioner, holding that it was legal error for the Appeals Council to refuse to consider a claimant's additional evidence that the Eleventh Circuit determined *was* chronologically relevant. *Id.* at 1321. The court recognized that an examination conducted after the ALJ's decision may still be chronologically relevant if it relates back to the period before the ALJ's decision. *Id.* In that case, the opinion of a psychologist who examined the claimant after the ALJ's decision was chronologically relevant when the psychologist stated in his opinion that his conclusions were based on, among other things, his review of the medical records from the period before the ALJ's decision. *Id.* at 1322. In contrast here, Plaintiff has not pointed to anything in the additional records showing that they were based on treatment provided to Plaintiff before the ALJ's decision.

The additional evidence Plaintiff submitted does not demonstrate that substantial evidence did not support the ALJ's decision, and the Appeals Council properly denied review.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Owens's arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 17, 2018.

_____
L. Scott Coogler
United States District Judge

160704